UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

LUIS ALBERTO MORALES LOAIZA,

    Petitioner,

v.

PHILLIP VALDEZ, et al.,

    Respondents.

No. 6:26-CV-029-H

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see* 8 U.S.C. § 1225(b)(2)(A). Luis Alberto Morales Loaiza, a native and citizen of Venezuela, is one such alien, having illegally entered the United States nearly five years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands release based on his Temporary Protected Status and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

*Buenrostro-Mendez* did not foreclose Morales Loaiza's TPS and due process claims. But the Supreme Court's recent decision in *Mullin v. Doe* forecloses his TPS claim. And neither the substantive nor procedural veins of due process require his release. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Morales Loaiza must be detained, though they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

## 1.    Background

Morales Loaiza is a citizen and national of Venezuela who illegally entered the United States at or near Del Rio, Texas in late 2021. Dkt. No. 9 at 7. He was soon placed into removal proceedings with a Notice to Appear. Dkt. No. 8 at 2. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled" and an immigrant without valid immigration documents. Dkt. No. 9 at 7; see 8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

After entering the country, Morales Loaiza applied for and received TPS pursuant to the 2023 TPS designation for Venezuela. See Dkt. No. 1-3 at 7–9. Last year, however, Kristi Noem—then the United States Secretary of Homeland Security—vacated the 2023 TPS designation for Venezuela, see 90 Fed. Reg. 8805 (Feb. 3, 2025), and terminated Venezuela's TPS designation, see 90 Fed. Reg. 9040 (Feb. 5, 2025). That decision was litigated across the country, most recently reaching the Supreme Court in a consolidated case, *Mullin v. Doe*. There, the Supreme Court determined that "the TPS statute's judicial-review bar applies to all non-constitutional claims." 609 U.S. ___, 2026 WL 1825840, at *10 (U.S. June 25, 2026). Because TPS for Venezuelans has been terminated, and because he is in the country without admission, the respondents have detained Morales Loaiza at the Eden Detention Center in Eden, Texas. Dkt. No. 1 ¶ 22.

In February 2026, Morales Loaiza filed a petition for a writ of habeas corpus. See id. The petition states two claims for relief. First, Morales Loaiza alleges that his detention violates the TPS statute, 8 U.S.C. § 1254a. Id. ¶¶ 40–43. Second, Morales Loaiza contends that his detention violates his due process rights. Id. ¶¶ 44–46.

The Court ordered the respondents to show cause why Morales Loaiza's petition should not be granted. Dkt. No. 4; *see* 28 U.S.C. § 2243. The respondents timely answered (Dkt. Nos. 8; 9), and Morales Loaiza replied (Dkt. No. 10).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit relied on the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3.    **Analysis**

As noted above, Morales Loaiza raises two claims in his habeas petition—one involving the TPS statute, and another based on the Fifth Amendment's Due Process Clause. Dkt. No. 1 ¶¶ 40–46. As explained below, *Mullin v. Doe* forecloses Morales Loaiza's TPS claim. Thus, the only claim left for consideration is Morales Loaiza's due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to release in numerous prior cases.[1] Even so, the Court considers the arguments raised in Morales Loaiza's briefing to address whether mandatory detention of aliens present in the United States violates the Constitution. The answer is no.

A.    **Morales Loaiza is not entitled to release because Venezuela's TPS designation has been terminated.**

Morales Loaiza urges that "he is entitled to immediate release from custody" by virtue of his TPS status. *Id.* ¶ 43. He relies on the class-action declaratory judgment in *National TPS Alliance v. Noem*, No. 25-CV-1766, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). *Id.* ¶ 30. There, the Northern District of California—notwithstanding the TPS statute's judicial review bar—"declar[ed] the vacatur of the January 17, 2025 extension of TPS for Venezuela and termination of Venezuela's 2023 TPS designation unlawful." *Id.* ¶ 31. It did so "based on [its] ruling in granting the partial final judgment on the APA claims." *Nat'l TPS All.*, 2025 WL 3539156, at *1.

*Mullin v. Doe*, however, held that "the text of the TPS judicial-review bar very clearly overcomes the general presumption in favor of judicial review." 2026 WL 1825840, at *8.

---

[1] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747 (N.D. Tex. 2026); *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

"In sum, . . . the TPS statute's judicial-review bar applies to all non-constitutional claims." *Id.* at *10. The declaratory judgment in *National TPS Alliance*, which was based on a purported violation of the APA, thus exceeded that court's authority under the TPS statute. Accordingly, Morales Loaiza's TPS claim is foreclosed.

### B.    The Due Process Clause does not require the government to release Morales Loaiza.

Morales Loaiza also claims that his detention violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 44–46. He devotes only a few sentences to this claim, arguing that his detention "is not rationally related to any immigration purpose," that "it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have," and that "it lacks any statutory authorization." *Id.* ¶ 46. He does not clarify whether his challenge is based on substantive or procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g., Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  Against that backdrop, the notion that substantive due process requires release is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Morales Loaiza has "only those rights regarding admission that Congress has provided by statute."  *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded."  *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  Accordingly, Morales Loaiza is not entitled to release as a matter of procedural due process.

## 4.     Conclusion

In short, Morales Loaiza, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  His TPS claim is foreclosed by Supreme Court precedent, and the Due Process Clause does not require his release.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on June 24, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE